[ Filed June 10, 1890.]

## O. C. GOVE & CO., APPELLANTS, *v.* THE ISLAND CITY MERCANTILE AND MILLING CO., RESPONDENT.

CONTRACT TO REPAIR MILL AND FURNISH MATERIAL—QUANTUM MERUIT.—When one performs services for another on a special contract, and, for any reason except a voluntary abandonment, fails to fully comply with his contract, and the service and material have been of value to him for whom they were rendered and furnished, he may recover for such material and services their reasonable value, after deducting therefrom any damages the party for whom such materials were furnished and services were rendered has sustained by reason of such failure. *Steeples* v. *Newton*, 7 Or. 110; *Tribone* v *Strowbridge*, *ibid*, 156, and *Todd* v. *Huntington*, 13 Or. 9, approved and followed.

APPEAL from Union county: JAS. A. FEE, judge.

The material portion of the complaint is as follows: "That heretofore, to wit, between the first day of May, 1886, and the first day of January, 1887, at Union county, State of Oregon, the plaintiffs, at the special instance and request of the defendant, and for its use and benefit, furnished a large amount of material and machinery

in, about and for the rebuilding, construction and repair of a certain flouring mill of the defendant, and, at its special instance and request, between said dates, did and performed a large amount of work and labor for the defendant in the rebuilding, construction and repair of said mill and its attachments. That said material and machinery, furnished to the defendant as aforesaid, and said work and labor done and performed for the defendant by the plaintiffs as aforesaid, were and are reasonably worth the full sum of $8,134.25; that said sum of $8,134.25 long since became and is now due and payable, and that no part of said sum except the sum of $5,631 has been paid thereon. That said sum of $8,134.25 became due and payable prior to January 1, 1887, and that there is now due and unpaid for said work, labor, material and machinery, after deducting said partial payment, the sum of $2,503.15, with interest, etc., and the same has been demanded," etc.

The answer, after denying the plaintiffs' allegations, avers that said labor was performed and material and machinery furnished under a written contract, which is set forth in the answer. The answer further avers that the plaintiffs did not perform or comply with the conditions of said contract on their part, in "that the millwright work performed by the plaintiffs upon said mill was not done in a thoroughly workmanlike or substantial manner, but that it was done in an unworkmanlike and unsubstantial manner; that the material and machinery furnished by the plaintiffs were not first-class of their kind or suitable for the purposes used, but that they were indifferent in quality and not at all adapted to the purposes expressed in said contract; that the plaintiff did not demonstrate that said mill when constructed by them had a capacity of sixty barrels of flour in twenty-four hours' time, or that it was capable of making as good flour or as much flour per bushel of wheat as any mill in Eastern Oregon when grinding the same kind of wheat; and that, in fact, said mill when abandoned by plaintiffs, did not

have a capacity of sixty barrels of flour in twenty-four hours' time or any greater capacity than forty-five barrels in said time; and that it was not capable of making as much flour per bushel of wheat or of as good quality as other mills in Eastern Oregon when grinding the same kind of wheat." The answer alleges, also, that the mill was not completed ready to run until September 20, 1886. The answer denies that the material, machinery, and labor were worth more than $5,200, and denies that the defendant accepted the mill, etc.

The reply admits the execution of the written agreement pleaded in the answer, and alleges that the plaintiffs "fully complied with the conditions of said contract, set up in said answer, on their part, excepting that a small portion of the machinery furnished under said contract was not in every respect what it should have been, and that the defects therein were not discovered by them at the time; that the plaintiffs, in good faith, endeavored to comply with the conditions of said contract, on their part, in every respect, and that an exact compliance therewith, in every respect, became and was impracticable." The plaintiffs gave evidence tending to prove the issues on their part, after which the defendant introduced evidence tending to controvert the plaintiff's evidence and to support the issues tendered by the defendant, after which the court gave numerous instructions to the jury, as follows:

(1) "The plaintiffs having undertaken by their contract to remodel the defendant's mill, and so construct it that it shall thereafter have a capacity of sixty barrels of flour in twenty-four hours' time, and should be capable of making as good flour, and as much per bushel of wheat, as any mill in Eastern Oregon, when grinding the same kind of wheat, are bound to *a strict performance* of the terms of their contract in each of these particulars; and if you find that the plaintiffs failed to perform their contract *fully in any one of these respects,* but that said mill, as turned over to the defendant, in September, 1886, was intrinsically incapable of accomplishing such results, and that the

plaintiffs voluntarily abandoned their work before said mill was made to fully comply with said contract in these particulars, they have no right of recovery in this action, and your verdict must be for the defendant, unless you find that such performance was prevented or waived by the act of the defendant, or that some service of value above the amount actually paid was rendered by the plaintiffs to the defendant and by it voluntarily accepted; or unless you find that the contract after its execution was modified by the defendant's agreement to increase the power, and that such increase of power might have made the mill fulfil the guaranty of the contract."

(2) "An aceptance within the terms of the last instruction must be one in regard to which the defendant had an option to take or reject. It must be voluntary. The fact that the defendant took possession of the mill in controversy, in the condition in which it was left by the plaintiffs, is not to be held to prejudice any right it may have to resist the payment herein sought to be enforced against it. It had a perfect right to take possession of said mill and operate it to the best advantage possible under the circumstances, and from this fact alone the defendant is not to be held to have waived the performance of any stipulation resting upon the plaintiffs or to have excused any default into which you may find the plaintiffs fell in the execution of the contract in the particulars above referred to."

(3) "Before the plaintiffs had a right to call on the defendant to accept the mill and make final payment specified in the contract, it was incumbent on them to demonstrate by an actual test that the mill as remodeled by them would grind sixty barrels of flour in twenty four hours' run, by actually grinding that amount, and that it would make as good flour and as much per bushel as any mill in Eastern Oregon, when grinding the same kind of wheat; and, having failed to establish such test by evidence, your verdict must be for the defendant, unless you find that they were absolved from so doing by some modification or recision of the contract."

(4) "I charge you that under the written contract entered into between the parties, the plaintiffs were under obligation to build a mill which would accomplish the stipulated results with the water-power as it existed at the time of the execution of the contract, and you will be so governed in arriving at your verdict, unless you find that the contract was, after its execution, modified by a further agreement whereby the defendant undertook to supply a greater power."

The court, of its own motion, gave the following charge:

(5) "But I instruct you that the provisions in this contract that plaintiffs should construct a mill of sixty barrels capacity, and capable of making as much flour and of as good quality from a bushel of wheat as any other mill in Eastern Oregon, were of the essence of the contract, and in this respect plaintiffs are bound to establish to your satisfaction that these terms were complied with before they can recover, or that they were absolved from so doing by some modification or recision of the contract, or were excused or prevented by defendant from so doing."

The court refused to give the following charges requested by appellant's counsel:

"If you find from the testimony that the plaintiffs constructed the mill mainly according to the written contract, that the work was done and the material and machinery furnished in good faith with the intent on the part of the plaintiffs to comply with said contract, and that the plaintiffs did not wilfully abandon the performance of said contract, then the plaintiffs are entitled to recover from the defendant the reasonable value of said work, material and machinery, not exceeding the contract price, less all payments heretofore made, and what it would cost to remedy the defects in said mill, and to make it correspond with said contract."

A verdict was returned for the defendant, upon which a judgment was duly entered, from which this appeal is taken.

*W. M. Ramsey,* for Appellants.

*L. B. Cox* and *R. Eakin,* for Respondent.

STRAHAN, J., delivered the opinion of the court.

Upon the trial in the court below exceptions were taken to each of the foregoing instructions and also to the refusal of the court to give the instruction asked by the appellants. The correctness of these rulings presents the only question necessary to be considered on this appeal. The instructions given by the court practically present but one question, and that is, whether or not, where a mechanic or builder binds himself by a written contract to erect or repair a building or machinery, and he performs, not literally according to the terms of the contract, but still in such a manner as to be of some value to the owner, and the owner accepts it and uses it, in an action on a *quantum meruit*, he may recover for the reasonable value of such labor or materials, notwithstanding his failure to substantially perform the written contract. The instructions given by the court in effect declare that no recovery can be had in such case, while the one asked on the part of the plaintiffs, and which was refused by the court, states the converse of that proposition. An examination of what is the correct rule of law on that subject therefore becomes necessary. In making this examination it will be more convenient to first consider the instruction which the plaintiffs requested, because if that stated the law correctly the instructions given by the court were necessarily incorrect.

1. In a case like the one under consideration, "the law implies that the work done and the materials furnished were to be paid for. The *general* rule of law is, that while a special contract remains open,—that is, unperformed,— the party whose part has not been done cannot sue in *indebitatus assumpsit* to recover a compensation for what he has done until the whole shall be completed. But the ·exceptions to that rule are in cases in which something has been done under a special contract, but not in strict accordance with that contract. In such case, the party cannot recover the remuneration stipulated for in the contract, because he has not performed that which was the

consideration of it. Still, if the other party has derived any benefit from the labor done, it would be unjust to allow him to retain that without paying anything. The law, therefore, implies a promise on his part to pay such as the benefit conferred is really worth; and, to recover it *indebitatus assumpsit* is maintainable. Such is the law now in England and in the United States, notwithstanding many cases in the reports of both countries are at variance with it." Mr. Justice Wayne in *Dennotts* v. *Jones,* 23 How. 240; L. ed., 240, book 16, pp. 442, 448; *Stillwell* v. *Phelps,* 130 U. S. 520; L. ed., book 32, p. 1035.

"The defense is that it was not done in a workmanlike manner. In such case the rule is well established that the plaintiff may recover on a *quantum meruit* and *quantum valebat* what the work done and materials furnished were worth, where, as in this case, the parties cannot rescind and stand *in statu quo,* but one of them must derive benefit from the labor of the other." Mr. Justice Works in *Katz* v. *Bedford,* 77 Cal. 319-321.

*Trowbridge* v. *Barrett,* 30 Wis. 661, was an action to recover for a balance due for putting up a stationary engine and boiler, where it appeared that the plaintiff had not fully performed his part of the contract, and the court said: "There is no arbitrary rule of law, which, in violation of every principle of natural justice, defeats the plaintiff's right of recovery in such case, and permits the defendant to enjoy the fruits of such labor and expenditure without making remuneration therefor. The defendant had the right to recoup all damages sustained by him by reason of the failure of the plaintiff to fully perform his contract with him." This doctrine is supported by an overwhelming weight of authority. *Newman* v. *McGregor,* 5 Ohio, 349; *Allen* v. *McKibbin,* 5 Mich. 449; *Howell* v. *Medler,* 41 Mich. 641; *Hayward* v. *Leonard,* 7 Pick. 180; 2 Parsons on Contracts, 523; *Woodward* v. *Fuller,* 80 N. Y. 312; *Heckman* v. *Pinkney,* 81 N. Y. 211; *Cutter* v. *Powell,* 2 Smith's L. C. 61; *Dermott* v. *Jones,* 2 Wall. 1. And this court is fully committed to the same doctrine. *Steeples* v. *Newbon,* 7 Or.

110; *Tribone* v. *Strowbridge*, 7 Or. 157; *Todd* v. *Huntington*, 13 Or. 9.

Without in any manner entering upon the discussion of the conflicting opinions and reasons to be found in the books on this vexed subject, it is sufficient to say that these cases are decisive of the question presented by the instruction under consideration. It stated the correct rule of law as announced by this court in the three cases above cited and the same should have been given. It results also that the instructions which were given by the court, and which are contrary to the doctrine of these cases, were erroneous and should not have been given. In the trial of this case the court below evidently undertook to apply what was said by this court in *Gove* v. *The I. C. M. & M. Co.*, 16 Or. 93, to the facts disclosed by this record. That was an action between the same parties founded upon the written contract, and it was held that before the plaintiffs could recover on that contract, they must show a compliance with its terms. This is an action on a *quantum meruit* to recover the reasonable value of the material and labor, and we hold that it will lie. This distinction is noted in several of the cases above cited, and particularly in *Todd* v. *Huntington*, *supra*. Upon the re-trial of this action in the court below the plaintiffs will be entitled to recover whatever amount they can show their work and material placed in the defendant's mill were reasonably worth subject to the right of the defendant to *recoup* from that amount such damages as it has sustained by the deviations from the written contract by the plaintiffs. These are the questions upon which the rights of the parties depend, and no doubt the trial court will exercise the power of amendment liberally so as to fully present them for trial before a jury.

The judgment appealed from must be reversed and the cause remanded to the court below for a new trial.